**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CHAMBERS OF**<br>**MICHAEL A. SHIPP**<br>UNITED STATES MAGISTRATE JUDGE | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST.  ROOM 2042**<br>**NEWARK, NJ 07102**<br>**973-645-3827** |

Not for Publication

**LETTER OPINION & ORDER**

July 12, 2010

**VIA CM/ECF**
All Counsel of Record

    Re:    **Glenz v. Sharp Electronic Corp.**
              **Civil Action No. 08-3652 (FSH)(MAS)**

Dear Counsel:

This matter comes before the Court by way of an informal motion to compel discovery filed by Aury Glenz and Teresa Mosley ("Plaintiffs"), on behalf of themselves and all others similarly situated. (Doc. No. 55.) This motion seeks an order to compel Sharp Electronics Corporation ("Defendant") to produce discovery related to the manufacturing, marketing and sale of Digital Light Processing ("DLP") projectors. For the reasons set forth below, and for other good cause shown, Plaintiffs' motion to compel discovery is GRANTED in part and DENIED without prejudice in part.

**I.**      **BACKGROUND**

Plaintiffs claim that Defendant misrepresented the service-life of lamps used in its DLP projectors. (Pls.' Moving Br. 1.) Specifically, Plaintiffs allege Defendant represented through advertisements and product specifications that lamp service-life would be between 2,000 and 3,000 hours, depending upon the projector's operating mode. (*Id.*) Plaintiffs contend that the service-life

of both the originally-included lamps and replacement lamps fail below the 2,000-hour threshold and, in some cases, the lamps explode and damage the projector. (*Id.* at 1-2.) Defendant denies advertising these service-life specifications and, to the extent it represented service-life to dealers, these representations were of "estimated lamp life … up to 2,000 and 3,000 hours," contingent on operating mode. (Def.'s Opp'n Br. 1 n.1.)

## II. ANALYSIS

Under Federal Rule of Civil Procedure 26(b), a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action, provided that the court finds good cause. This Court applies a liberal standard, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978)); *see also Wiggins v. Clementon Police Dep't*, No. 07-5033, 2009 U.S. Dist. LEXIS 66955, at *5 (D.N.J. July 30, 2009) (citing *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)). The party seeking discovery bears the burden to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 1990); *see also Nestle Food Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 103 (D.N.J. 1990). Stated differently, Federal Rule of Civil Procedure 26 has been interpreted to mean that discovery encompasses "any matter that bears on or reasonably could lead to other matters that could bear on any issue that is or may be in the case." *Kopacz v. Del. River & Bay Auth.*, 225 F.R.D. 494, 496 (D.N.J. 2004). Importantly, a party must correct or supplement its prior disclosure or response "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made

known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1)(A).

Although the Federal Rules of Civil Procedure allow for broad and liberal discovery, the Third Circuit has stated that the "right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Specifically, when the burden of a discovery request is likely to outweigh the benefits, Federal Rule of Civil Procedure 26(b)(2)(C) vests the District Court with the authority to limit a party's pursuit of otherwise discoverable information. *See id.* When assessing whether the burden to produce outweighs the benefits, the following factors may be considered: (i) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery;" and (iii) "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). The purpose of this rule of proportionality is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Bowers v. Nat'l Collegiate Athletic Ass'n*, No. 97-2600, 2008 U.S. Dist. LEXIS 14944, at *14 (D.N.J. Feb. 27, 2008) (quoting *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989)).

### A. Production of Documents from Defendant's Parent and Sister Corporations

Plaintiffs claim that Defendant inappropriately limited the scope of discovery. Plaintiffs argue that Sharp Corporation, Defendant's parent company, holds certain "core technical documents" related to the DLP projectors. (Pls.' Moving Br. 3.) These purported documents were never turned over to Plaintiffs. Plaintiffs argue that Defendant must produce the documents in

3

Sharp Corporation's possession because, pursuant to Fed. R. Civ. P. 34(a)(1), these documents are in Defendant's "control." (*Id.* at. 3-4.) Plaintiffs assert that the Third Circuit's interpretation of control is broad enough to encompass the relationship between Defendant and Sharp Corporation. (*Id.*) In support of this position, Plaintiffs cite *Gerling International Insurance Co. v. Commissioner of Internal Revenue*, 839 F.2d 131, 140-141 (3d Cir. 1988), to state that control exists (i) when the subsidiary can secure documents from the parent to meet its own business needs and documents helpful for use in litigation; (ii) where the subsidiary has access to documents as needed during the ordinary course of business; (iii) when the subsidiary is the domestic marketer and servicer of a foreign parent's products; (iv) where an "alter ego" relationship exists; and (v) where the subsidiary was an agent of the parent in the transaction(s) giving rise to the lawsuit. (*Id.* at 4.) In particular, Plaintiffs argue *Gerling* is applicable because Defendant's website identifies Defendant as "the U.S. sales and marketing subsidiary of Japan's Sharp Corporation." (*Id.*) Plaintiffs claim the Defendant's own website demonstrates that Defendant, Sharp Corporation and Nanjing Sharp Electronics Co., Ltd. worked in concert to allow Defendant to market and sell Sharp DLP projectors in the United States. Also, Plaintiffs note that a high-level executive within Sharp Corporation also held a high-level position with Defendant. (Pls.' Reply Br. 2.) Thus, Plaintiffs assert that Defendant must produce all relevant documentation in possession of Sharp Corporation and its subsidiaries.

   Defendant disagrees with Plaintiffs' interpretation of "control" and argues it has no obligation to produce documents in possession of Sharp Corporation or Sharp Corporation's subsidiaries. (Def.'s Opp'n Br. 3.) Defendant asserts that it has no "legal right" to obtain the documents Plaintiffs request and therefore cannot produce them. (*Id.*) Defendant contends that

4

control "is defined . . . as the legal right to obtain the documents requested on demand." (*Id.*) (citing *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984).) As a subsidiary of Sharp Corporation, Defendant contends the "parent-child" relationship prohibits it from having control over any documents in Sharp Corporation's possession. (*Id.* at 4.) Further, Defendant argues that it cannot produce documents in possession of Nanjing Sharp Electronics Company ("Nanjing") because it is not an "alter ego" of Defendant. (*Id.*) Finally, Defendant notes that Phoenix Electric Co. ("Phoenix") is an independent third party without corporate ties to Defendant or business relations so intertwined as to render their distinct identities meaningless. (*Id.*) As such, Defendant asserts that it has no legal right over any of the three entities and cannot control documents in their possession.

The Third Circuit interprets a party's control over documents in the possession of a parent, subsidiary or sister company broadly. In explaining the obligations of a subsidiary to its parent, the *Gerling* court stated where "the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." *Gerling Int'l Ins.*, 839 F.2d at 141. Following *Gerling*, this Court has identified a number of scenarios where a subsidiary had control over documents in possession of the parent:

(1) [T]he alter ego doctrine which warranted "piercing the corporate veil;"

(2) the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit;

(3) [t]he relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation;

(4) [t]here is access to documents when the need arises in the ordinary course of business; and

(5) [the] subsidiary was marketer and servicer of parent's product in the United States. *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441-442 (D.N.J. 1991). In all these scenarios, the moving party bears the burden of proving the producing party has the requisite control to produce the sought-after documents. *Id.* at 441.

Based on the information currently before the Court, Plaintiffs have not met their burden to establish that Defendant has control over the requested discovery. As to Sharp Corporation, Plaintiffs' analogy to the facts in *Cooper Industries* is incomplete. Plaintiffs identify the defendant in *Cooper Industries* as the "marketing and distribution subsidiary." (Pls.' Moving Br. 3.) However, the *Cooper Industries* Court described the defendant as "the distributor and *servicer*" of the foreign corporation's airplanes. *Cooper Indus.*, 102 F.R.D. at 919 (emphasis added). This distinction makes clearer why it would be "inconceivable" for the distributor and servicer to lack control over the "service manuals and blueprints" at issue. *Id.* Plaintiffs provide no similar basis as to why it would be inconceivable for Defendant to lack control over the "design schematics and other core technical documents" when Defendant "appears to be more like a marketing and distribution entity."[1] (Pls.' Moving Br. 3.) Further, Plaintiffs point out that a Sharp Corporation executive also held a title with Defendant, but they fail to identify this individual's relevancy to control as it relates to the documents at issue. While Plaintiffs state their counsel knows these documents are in possession of Sharp Corporation, Plaintiffs provide no grounds for this Court to find Defendant has the control to turn over these documents.

---

[1] The Court acknowledges that Plaintiffs also cite a different part of Defendant's website that lists Defendant's "business activities" as "manufacture and sales" of electronics but Plaintiff does so while reemphasizing the sales and marketing function.

As to the other two entities, Plaintiffs provide no evidence that Defendant could access their documents during the ordinary course of business. Plaintiffs' evidence related to Nanjing and Phoenix derives primarily from Defendant's Response to Interrogatories and Defendant's website. In its interrogatory responses, Defendant referenced these entities several times:

**Response No. 4**: Defendant states that the . . . projectors were manufactured in China by Nanjing . . . .

**Response No. 22**: Defendant states that Sharp Corporation, Nanjing . . ., Phoenix . . ., and Defendant were involved with the design and/or manufacture and/or marketing and/or advertisement and/or assembly and/or testing and/or sale of the . . . projectors.

**Response No. 25**: Defendant states that Phoenix . . . manufactured the lamps in the . . . projectors.

These responses do not adequately provide Plaintiffs the grounds on which to claim "Nanjing was actively involved, from design to sale, with these defective products" or to determine with sufficient specificity which entity performed what role throughout that process. (Pls.' Reply Br. 5.) Moreover, Plaintiffs admit that they did not know whether Phoenix was even part of the Sharp-related companies. (*Id.* at 5 n.6.) Thus, Plaintiffs provide no grounds on which this Court could compel discovery of documents in possession of Sharp Corporation, Nanjing or Phoenix.

However, Plaintiffs accurately diagnose the cause of their insufficient evidentiary support and prescribe a reasonable remedy. Plaintiffs should be permitted to proceed with targeted discovery regarding the structural and functional relationship between Defendant, the three other entities and any other entities that are in possession of relevant documents over which Defendant could be alleged to assert control. Plaintiffs also rightly suggest that production of detailed

organizational charts and a deposition of Defendant's corporate designee may yield a clearer picture of how these entities interrelate and whether Defendant can assert control over the documents in question.[2] Therefore, the Court will provide the parties a limited amount of time to engage in discovery regarding the "control" issue and will reexamine the issue after completion of the additional discovery.[3]

### B. Class Certification Issues

Plaintiffs argue that Defendant has not responded to all class-related interrogatories or produced all class-related documents. First, Plaintiffs argue they need access to Defendant's systems and databases that "track information relating to the identity and addresses for all or any of the current or past owners of DLP projectors" to establish that the class is so numerous that joinder of all numbers is impracticable. (Pls.' Moving Br. 5.) Defendant argues Plaintiffs do not need purchasers' specific identities because it has already provided the number of projectors sold and suggest that Plaintiffs only request this sensitive information in search of individuals to serve as named plaintiffs. (Def.'s Opp'n. Br. 7-8.)

---

[2] Defendant asserts that it already produced numerous organizational charts containing 16 pages. Defendant also asserts that corporate organizational structure charts of Sharp Corporation and its subsidiaries are publicly available and have already been obtained by Plaintiffs. Therefore, the Court will require Plaintiffs to serve and Defendant to respond to a supplemental discovery request regarding organizational charts.

[3] Plaintiffs alternatively request permission to file a motion to amend the complaint to add Sharp Corporation as a party. (Pls.' Reply Br. 5 n.6.) Plaintiffs acknowledge that such a motion would be outside the time frame of the scheduling order. However, Plaintiffs note that the scheduling order required the motion to be filed prior to service of discovery responses. (*Id.*) The Court holds this request in abeyance. The Court will hear from counsel regarding all outstanding discovery-related issues, including Plaintiffs' request to file a motion to amend the complaint, at the next in-person status conference. In addition, the Court will enter an amended scheduling order at that time.

While Defendant may have provided the total number of units sold, it is possible for one individual or entity to purchase more than one projector. To argue that joinder of all purchasers is impracticable, Plaintiffs require more than sales figures, and neither party has suggested a less-intrusive manner of obtaining this information. In opposition, Defendant has cited case law where such requests, albeit under different fact patterns and different jurisdictions, invaded privacy interests. This Court recognizes Plaintiffs request sensitive information but a balance must be struck between providing the necessary discovery with protecting private data. Therefore, Defendant must produce the number of individual purchasers and, to the extent available, their states of residence. This will permit Plaintiffs to determine the number and geographic dispersion of potential class members without forcing Defendant to disclose sensitive information not relevant to establishing numerosity. The remainder of Plaintiffs' discovery requests related to Interrogatory No. 14 and Document Requests No. 18 is denied without prejudice.

Next, Plaintiffs argue they require information relating to the marketing and/or advertisement of Defendant's DLP projectors and lamps to establish that questions of law or fact exists common to the class. (Pls.' Moving Br. 5.) Finally, Plaintiffs assert they need information related to Defendant's knowledge regarding (i) the lamps' service-life; (ii) Defendant's representations about that service-life; and (iii) additional information to determine whether resolution is achievable on a class-wide basis. (*Id.*) Plaintiffs conclude that this information must relate to all DLP projectors sold by Defendant, not only those two purchased by named Plaintiffs. (*Id.* at 6.) This conclusion is premised upon this Court's May 12, 2009 Amended Scheduling Order (Doc. No. 51) permitting "discovery addressing the Plaintiffs' class allegations" in this first discovery phase.

Defendant rejects Plaintiffs' assertions that this information is necessary in light of what it has already provided to Plaintiffs. Defendant responds that it has already provided Plaintiffs with all responsive documents relating to the two projector models purchased by Plaintiffs. (Def.'s Opp'n Br. 6-7.) Defendant argues that this information is sufficient to satisfy this Court's Amended Scheduling Order and that production of information as it related to all other DLP projectors would be unduly burdensome, particularly where much of this information must be translated from Japanese. (*Id.* at 5-8.)

This Court's Amended Scheduling Order bifurcated discovery into two phases. The first phase was designated to address "the Plaintiffs' class allegations, the model of projector purchased by Named Plaintiff(s), the circumstances surrounding such purchase(s), and the use of such projector by named Plaintiff(s)." (Doc. No. 51.) The final three areas relate to purchases by the named Plaintiffs. However, Plaintiffs' class allegations are not restricted to the sub-class of purchasers of the two projector models named Plaintiffs purchased. Plaintiffs made clear in their complaint the intention to include all purchasers of all of Defendant's DLP projectors as members of the injured class. Therefore, Plaintiffs are entitled to class certification discovery related to all DLP projectors, not only those two models purchased by named Plaintiffs.

This Court does not seek to compel discovery that unduly burdens Defendant. Briefs from both parties indicate that Plaintiffs have already received considerable discovery related to all projectors. Further, Defendant indicates that many projectors bear sufficient similarity to allow certain documents and manuals to apply to more than one projector. As such, Defendant is free to

10

certify single translations of these common documents with supplements regarding unique areas as appropriate.[4]

### C. Information Specific to Named Plaintiffs

Plaintiffs argue Defendant must produce the suggested retail price of each projector purchased by named Plaintiffs. (Pls.' Moving Br. 7.) Plaintiffs assert that this information "goes to the circumstances surrounding their projector purchases." (*Id.*) Defendant rejects Plaintiffs' request on the basis that the actual price paid by the named Plaintiffs, rather than Defendant's suggested retail price, is the only price relevant to class certification. (Def.'s Opp'n. Br. 8.)

Plaintiffs' request falls within the parameters of the first discovery phase, as it deals with the circumstances surrounding the purchase of the projectors by the named Plaintiffs. Thus, the requested information is relevant to the purchases by the named Plaintiffs and may lead to admissible evidence. Therefore, to the extent it has not already, Defendant must produce the information requested.

---

[4] This Order is made without prejudice to Defendant's ability to raise the burdensomeness issue. Defendant's burdensomeness assertions were not substantiated to the extent that the Court could make a Rule 26(b)(2)(C) analysis. For example, the motion papers did not reflect the transaction costs or estimate the number of documents that must be translated, the number of documents which overlap with each other, etc. Similarly, Plaintiffs did not provide adequate information from which the Court could employ a Rule 26(b)(2)(C)(iii) analysis. Therefore, the Court is willing to revisit the issue, if necessary, during the upcoming status conference.

III. **CONCLUSION**

For the foregoing reasons, it is on this **12th** day of **July, 2010**,

**ORDERED THAT:**

1. Regarding documents in possession of Defendant's parent and subsidiaries:

    a. Plaintiffs' Motion to Compel discovery of documents in possession of Sharp Corporation, Nanjing and Phoenix is denied without prejudice.

    b. Plaintiffs shall serve a supplemental discovery request related to organizational charts by **7/19/2010**.

    c. Defendant shall serve its response to the supplemental discovery request regarding organizational charts by **7/30/2010**.

    d. Plaintiffs may conduct a 30(b)(6) deposition related to Defendant's potential control of documents by **8/30/2010**.

2. Regarding the class certification issues:

    a. Defendant shall produce the number of individual purchasers of all DLP projectors and each purchaser's state of residence by **8/12/2010**.

    b. Defendant shall respond to Plaintiffs' remaining class certification requests set forth in section B of this Opinion by **9/10/2010** or indicate its intent to raise the burdensomeness issue pursuant to the provision in item number 4 below.

3. Defendant shall produce the suggested retail price of the two projectors purchased by named Plaintiffs by **8/12/2010**.

4. There shall be an in-person status conference on **7/28/2010** at **11:30 a.m.** in Courtroom 2C. Counsel shall e-file a joint status letter by **7/21/2010**. The joint status letter shall set

forth any discovery related disputes not specifically addressed by the within Opinion and Order, and each party's position regarding any such disputes. If Defendant intends to asserts burdensomeness in connection with provision 2(b)(above), both parties must set forth an analysis of the Rule 26(b)(2)(C) factors as it relates to the discovery at issue.

_____
HONORABLE MICHAEL A. SHIPP
UNITED STATES MAGISTRATE JUDGE